# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**EMMETT GRAHAM, Jr.,**

       **Plaintiff,**

**v.**                                                **Civil action no. 2:05cv89**
                                                         **(Judge Maxwell)**

**JOHN ASHCROFT, et al..**

       **Defendants.**

## REPORT AND RECOMMENDATION

## I.  INTRODUCTION

On December 7, 2005, the plaintiff, initiated this case by filing a civil rights complaint pursuant

to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), a

case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and  authorized suits against

federal employees in their individual capacities. In his complaint, the plaintiff indicates he has filed

other lawsuits concerning the same issues.  In fact, the plaintiff filed a §2241 action in this Court

regarding the same underlying facts (case no 1:03cv227) which was dismissed, and he filed a

mandamus action in the United States District Court for the Middle District of Pennsylvania requesting

that the respondent be directed to provide medical services regarding his pacemaker and hematuria disk

(case no. 3:02 cv1536).[1]  The plaintiff also filed a case in the Eastern District of North Carolina, case

no. 5:98ct-654-H-1990, which was dismissed without prejudice in 1999, and a case in the United States

District Court for the Middle District of Pennsylvania which was dismissed in September 2003 for lack

---

[1]By Order entered on June 17, 2004, the Middle District of Pennsylvania dismissed the
Petition for Writ of Mandamus because the plaintiff had been transferred to FCI-Gilmore and had
filed an action based on the same claims he raised in the Middle District of Pennsylvania.

of personal jurisdiction. Finally, the plaintiff filed a Bivens action in this Court on March 11, 2004, raising substantially the same claims raised herein. On August 9, 2005, the plaintiff's claims under the ADA were dismissed with prejudice and the remainder of his allegations were dismissed without prejudice for failure to exhaust administrative remedies. This matter is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 83.01, et seq., and 28 U.S.C. §§ 1915(e) and 1915(A).

## II. FACTS

In his complaint, the plaintiff alleges that upon his arrival at FCI - Gilmore on July 16, 2003, he told Dr. Williams that he was having "serious" chest pains, dizziness, fainting spells and an "inability to get out of bed in the morning." He asked to see a cardiologist, but instead, was evaluated by defendant Williams. The plaintiff further alleges that he told Defendant Williams that his pacemaker was outdated and needed to be replaced, the pacemaker was on the wrong setting, and his chest pains and dizziness were worsening. The plaintiff indicates that he went to the prison medical department approximately twenty times but received "no help." The plaintiff notes that he then wrote to John Ashcroft, United States Attorney General, and Harley Lappin, United States Federal Bureau of Prisons, and they sent a representative from St. Jude Medical Center. The plaintiff states that the representative from St. Jude determined that the pacemaker battery was totally dead and needed replaced immediately. However, the plaintiff alleges that defendant Administrator Bunts failed to have the battery replaced.

On December 20, 2003, the plaintiff became unconscious and was taken to the hospital in Weston, West Virginia, where his pacemaker was replaced. According to the plaintiff, when he was being taken to the hospital, the prison staff dropped him from an ironing board (there was no stretcher in the unit) injuring his back. The plaintiff indicates that he attempted to receive treatment for his back after he was dropped but did not receive any treatment from defendant Williams until January 21, 2004,

2

when she gave him a back brace and had x-rays taken.  The plaintiff alleges that he is still in pain and has asked to see qualified physician, but such has not occurred.

.       **III.  <u>PLAINTIFF'S CLAIMS AGAINST DEFENDANTS</u>**

The plaintiff alleges that Attorney General John Ashcroft is charged with the direction of the Bureau of Prisons.  Among the duties of the Bureau of Prisons are: (1)  the management and regulation of all Federal Penal Correctional Institutions; (2) the provision of suitable quarters for and safekeeping, care and subsistence of all persons charged with, or convicted of offenses against the United States; and (3) the protection, instruction and discipline of all persons charged with or convicted of offenses against the United States.

The plaintiff alleges that the Bureau of Prisons, which is currently directed by Harley Lappin, has a Program Statement PS 6000.15, Health Services Manual, that is the reference point for  medical care for all federal prisoners.  The plaintiff alleges that the Bureau of Prisons and its agents and servants have not complied with the standards contained in the Health Services Manual.  More specifically, the plaintiff alleges that the all of the named federal defendants provided substandard care over a long period of time that virtually amounted to no medical care at all as demonstrated by his deteriorated back and heart conditions.

With respect to Harley Lappin, specifically, the plaintiff alleges that by letter dated November 24, 2003, he made Mr. Lappin aware of his need to have the battery in his pacemaker replaced but nothing was done.  The plaintiff alleges that Mr. Lappin failed to oversee the operation of his subordinates.

The plaintiff alleges that defendant Wendt, the warden at FCI Gilmore, acknowledged that he was aware of the plaintiff's numerous medical problems but failed to take appropriate action, thus allowing the battery on his pacemaker to go dead.  The plaintiff alleges that defendant Wendt's conduct

3

was deliberately indifferent, and violated his Eighth Amendment rights.

The plaintiff also asserts that defendant Bunts, Hospital Administrator, conspired with defendant Williams and others to deny him medical care. According to the plaintiff, defendant Bunts failed to send him to a qualified physician, and she told the representative from St. Jude that she would take care of the his pacemaker battery immediately but she did not. In addition, he asserts that she replied "so what" when he stated he was out of his heart medication. Finally, the plaintiff asserts that defendant Bunts ignored his requests to see a neurosurgeon about his back and shoulder. The plaintiff alleges that defendant Bunts acted with deliberate indifference and violated his Eighth Amendment rights.

The plaintiff alleges that defendant Williams delayed his access to medical care which was unreasonable and medically unjustified and made his medical condition worse. The plaintiff alleges that delay resulted in permanent harm, thus constituting deliberate indifference.

The plaintiff asserts that defendant Veltri, Unit Manager, denied him a handicapped cell even though he told her he was having back problems, dizzy spells, and heart trouble. The plaintiff further asserts that he filed an administrative remedy regarding defendant Veltri's actions, and she told him to drop his BP-8 or he would be placed in the S.H.U. According to the plaintiff, on November 5, 2003, he was placed in the S.H.U. and was kept there until November 13, 2003. The plaintiff alleges that defendant Veltri caused him to suffer cruel and unusual punishment, and she retaliated and discriminated against him in violation of the Eighth Amendment.

## IV. ANALYSIS

A. Exhaustion

A Bivens action, like an action under 42 U.S.C. §1983, is subject to exhaustion of administrative remedies as required by the Prison Litigation Reform Act (PLRA). Porter v. Nussle,

534 U.S. 516 (2002). Under the PLRA, a prisoner bringing an action "with respect to prison conditions" must first exhaust all available administrative remedies. 42 U.S.C. §1997e. Exhaustion as provided in §1997e(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). While the phrase "with respect to prison conditions" is not defined in 42 U.S.C. §1997e, the Supreme Court has determined that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they alleges excessive force or some other wrong." Porter, supra at 517 . Moreover, exhaustion is even required when the relief the prisoner seeks, such as monetary damages, is unavailable. Booth, supra at 741. Additionally, district courts should enforce the exhaustion requirement sua sponte if not raised by the defendant. Brown v. Tombs, 139 F.3d 1102 (6th Cir.), cert denied, 525 U.S. 833 (1998). The PLRA requires the complaint to be dismissed until the record demonstrates on its face that the prisoner has exhausted his administrative remedy. Id.; 42 U.S.C. §1997e(a). However, under 42 U.S.C. §1997e(c)(2), the court can dismiss a claim, even if unexhausted, if it is without merit. Therefore, although it appears that the plaintiff may not have exhausted his administrative remedies, they are addressed in the following sections.[2]

## C. Eighth Amendment Claims

To state a claim under the Eighth Amendment, plaintiff must show that defendants acted with deliberate indifference to serious medical needs of a prisoner. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless

---

[2]Attached to the plaintiff's complaint are a number of documents relating to the plaintiff's administrative appeals, some dated as late as September 2005. However, it is not clear from those attachments that the plaintiff has exhausted the BOP's four-step administrative process with regard to each of his allegations.

exceptional circumstances are alleged.  Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

To succeed on an Eighth Amendment claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind."  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  When dealing with claims of inadequate medical attention, the objective component is satisfied by a serious medical condition.

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention."  Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[3]

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss.  Monmouth 834 F.2d at 347.  Thus, while failure to provide recommended elective knee surgery does not violate the Eighth Amendment,  Green v. Manning, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth Amendment.  Derrickson v. Keve, 390 F.Supp. 905,907  (D.Del.1975). Further,

---

[3] The following are examples of what does or does not constitute a serious injury.  A rotator cuff injury is not a serious medical condition.  Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious.  Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition.  Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition.  Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities.  Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997).

prison officials must provide reasonably prompt access to elective surgery. West v. Keve, 541 F. Supp. 534 (D. Del. 1982) (Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

The subjective component of a "cruel and unusual punishment" claim is satisfied by showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844. "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, or lack thereof, must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beeorn, 896 F.2d 848, 851 (4th Cir. 1990); Norris v. Detrick, 918 F.Supp. 977, 984 (N.D.W.Va. 1996), aff'd, 108 F.3d 1374 (4th Cir. 1997).

Here, the plaintiff's allegations of negligence do not state a claim that his Eighth Amendment rights were violated. The undersigned finds that looking at the complaint as a whole, the defendants have not been deliberately indifferent to the plaintiff's serious medical needs. In fact, the United States District Court for the Middle District of Pennsylvania required monthly updates on the plaintiff's condition, and noted that the plaintiff's pacemaker was being evaluated at regular intervals and was operating normally. Eventually, because the pacemaker was possibly near the end of its life span

7

and the Clinical Director was concerned regarding the longevity of the battery, FCI-Gilmore scheduled

an appointment for the plaintiff with St. Jude Medical which appointment took place on December 17,

2003. At the conclusion of the examination, the technician determined that the battery was in fact at

the end of its life. Therefore, FCI-Gilmore scheduled an appointment with a cardiologist to have the

battery changed at the earliest available date and all pre-admission test work for the procedure was

performed by FCI-Gilmore.[4] Therefore, the evidence reveals that the defendants were monitoring the

plaintiff's condition and were not acting with deliberate indifference to his heart condition.[5]

With respect to the plaintiff's back condition, the record contains the February 27, 2004 report

of the Lumbar Spine CT the plaintiff underwent on February 23, 2004. The report notes no

abnormalities of L1-2 through L3-4. Although a mild disc bulge was evident at L4-5 and possibly L5-

S1, there was no significant impingement. Furthermore, there was no HNP or spinal stenosis. The

plaintiff's wheelchair was replaced with a cane on December 29, 2004, following a report of normal

electromyogram and nerve conduction tests. In addition, at least as of July 5, 2005, the plaintiff had

a current prescription for Tylenol #3. Thus, the record before the Court gives no indication that the

defendants have been deliberately indifferent to the plaintiff's back condition. Furthermore, while the

plaintiff may wish to see a neurosurgeon with regard to his back and shoulder complaints, there is

nothing in the record to suggest that medical personnel who have examined the plaintiff believe such

an appointment is necessary. Mere disagreement with regard to treatment does not support a claim that

---

[4]Three days later, before he could be scheduled for an appointment with a cardiologist, the plaintiff lost consciousness and was transported to the hospital where corrective measures were taken, and there is no indication that he suffered any substantial or permanent harm as the result of this incident.

[5]In addition, Defendants Lappin and Wendt have no liability because the plaintiff seeks to hold them liable on the basis of supervisory liability. Respondeat superior is not a viable theory of liability in a Bivens action. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001).

the plaintiff's Eighth Amendments rights have been violated.  See Wright v. Collins, 766 F.2d 841, 849

(4th Cir. 1985).

**D.  Conspiracy Claim**

To establish a civil conspiracy, the plaintiff must prove that the defendants acted jointly in

concert and that some overt act was done in furtherance of the conspiracy which resulted in the

plaintiff's deprivation of a constitutional right.  Hinkle v. City of Clarksburg, WV, 81 F.3d 416 (4th Cir.

1996).  Furthermore, the allegation of conspiracy must be more than a "naked assertion", there must

be supportive facts to sustain an action under 42 U.S.C. §1983.  Phillips v. Mashburn, 746 F.2d 782

(11th Cir. 1984).  To state a conspiracy, the complaint must include adequate allegations of "a

combination, agreement, or understanding among all or between any of the defendants." Ammlung v.

City of Chester, 494 F.2d 811, 814 (3rd Cir. 1974).  Where a complaint does not contain factual

allegations "that defendants plotted, planned, or conspired together to carry out the alleged chain of

events," the conspiracy claim must fail.  Id.  See also Shelton v. Angelone, 148 F.Supp.2d 670, 679

(W.D. Va. 2001)("Where the complaint makes only conclusory allegations of a conspiracy under §1983

and fails to demonstrate any agreement or meeting of the minds among the defendants, the court may

properly dismiss the complaint.)  Here, the plaintiff only makes a conclusory allegation of a conspiracy,

and therefore, his claim of conspiracy should be dismissed.

**E.  Retaliation Claim**

The plaintiff alleges that he was placed in the S.H.U. in retaliation for complaining about his

medical care.  The plaintiff was placed in administrative detention from November 5, 2003 until

November 12, 2003.  The plaintiff was told that he was placed in administrative detention for violating

BOP regulations and because he was threatened by African-American inmates.

In order to sustain a claim based on retaliation, a plaintiff "must allege either that the

retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Therefore, "in forma pauperis plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked conclusory allegations of reprisal to survive [§1915(e)(2)(B)]." Id. at 74. "To hold otherwise would be to bring virtually every unpopular decision by state actors within the scope of a cause of action for retaliation. This would pose particular problems in the context of prison administration. Every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct. The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties." Id. Furthermore, claims of retaliation are treated with skepticism in the prison context. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). Additionally, a plaintiff alleging that government officials retaliated against him in violation of his constitutional rights must demonstrate, *inter alia*, that he suffered some adversity in response to his exercise of protected rights." American Civil Liberties Union of Maryland, Inc. v. Wicomico County, Md., 990 F.2d 780, 785 (4th Cir. 1993). In the instant case, the plaintiff's allegations of retaliation are unsupported and conclusory. Consequently, the plaintiff's claim of retaliation should be dismissed.

## V.  MOTION TO AMEND

On May 11, 2006, the plaintiff filed a Motion to Amend Pursuant to Rule 15(A) and 19(A) Fed. R. Civ. P. and Injunctive Order, and Lien Against Respondents, and for Appointment of Counsel Under 18 U.S.C. §3006(A)(2)(B). Federal Rules of Civil Procedure 15(a) provides that "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. Otherwise a party may amend the party's pleading only by leave

of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. Because no responsive pleading has been filed, the plaintiff is allowed to amend without permission of the Court. Thus, the plaintiff's amended complaint should be deemed filed.

In his amended complaint, the plaintiff adds no additional defendants. He alleges that he continues to be denied adequate medical care and feels his constitutional rights are still being violated, but he adds no additional specific facts. Consequently, the plaintiff asks the Court to move forward with his case. In addition, the plaintiff asks the Court to place liens against all the defendants' property and asks that counsel be appointed under 18 U.S.C. §3006(A)2(B). Finally, he seeks injunctive relief against the Bureau of Prisons to stop forcing him to work.

First, with respect to appointment of counsel, the provision plaintiff cites relates to the authority of the court to appoint counsel to individuals seeking habeas relief under §§2241, 2254, or 2255 of title 28. Here, the plaintiff is seeking relief under Bivens. Given that the plaintiff has failed to state a claim on which relief can be granted, he is not entitled to a court appointed attorney. Likewise, because the plaintiff has failed to state a claim on which relief can be granted, there is no basis for the Court to place liens against any of the defendants' property.

Finally, with respect to the plaintiff's request for an injunctive order against the Bureau of Prisons, it would appear that the plaintiff is alleging for the first time in any of the numerous civil cases he has filed in district court that he is being forced to work despite his age and physical condition. This allegation, if true, might raise a cognizable claim under Bivens. However, this allegation clearly has not been exhausted as no document filed by the plaintiff in an attempt to exhaust his administrative remedies ever mentions his being required to work, let

11

alone that being required to work is contradicted by his physical condition.  Accordingly, to the extent that the plaintiff is attempting to amend his complaint to add this allegation, the same should be denied for failure to exhaust his administrative remedies.

## VI.  RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that: (1) the plaintiff's <u>Bivens</u> complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** under 28 U.S.C. §§ 1915(e) and 1915A for failure to state a claim; (2) to the extent that the plaintiff is attempting to raise an allegation that he is being forced to work despite his medical conditions, the plaintiff's amended complaint (Doc. 14 ) be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust his administrative remedies; and (3) the plaintiff's request for court appointed counsel, injunctive relief and liens contained in his amended complaint be **DENIED**.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are  made, and the basis for such objections.  A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge.  Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to the *pro se* plaintiff and any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: June 15, 2006

 /s/ James   E.   Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE